## BARILI et al. v. SHEPHERD.
### Patent Appeal No. 3155.

Court of Customs and Patent Appeals.
June 12, 1933.

Henry E. Stauffer, of Washington, D. C. (Jas. L. Skidmore, of Washington, D. C., of counsel), for appellants.

Otto R. Barnett, of Chicago, Ill. (Lawrence T. Barnett, of Chicago, Ill., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an interference proceeding in which the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences awarding priority to appellee. From the board's decision, appellants, by appeal, have brought the matter to this court for review.

The interference was declared between a patent, No. 1,704,647, issued to appellants on March 5, 1929, on an application, serial No. 283,534, filed June 7, 1928, and an application, serial No. 251,571, filed by appellee February 3, 1928.

Two counts are involved. Count 1 is quoted as typical: "1. A rail anchor comprising a jaw member, an integral downwardly extended body portion terminating at its lower end in vertical alinement with the outer edge of the jaw member and parallel with the upper edge of said jaw member and formed with an inner smooth face adapted to contact with a cross-tie, an upward extension formed at the other end, and an intermediate outwardly extended hook-shaped portion."

From the decision of the Board of Appeals we quote the following description of the invention: "The invention relates to a rail anchor which is intended for use to prevent creeping of the rails with reference to the ties on which they are mounted when a train passes over the rails. The anchor is provided with portions which grip the rail flanges and it also has a downwardly directed portion to abut against the side face of a tie. The side portions of the anchor are normally spaced a distance which is less than the width of the rail and they are connected by a laterally curved member which permits these portions to be separated sufficiently to clamp over the outer edges of the rail flanges."

The Board of Appeals awarded to appellee a date of conception "as early as August, 1927," with disclosure to others "as early as January 9, 1928." Appellee relies upon his filing date of February 3, 1928, for reduction to practice.

As to appellants, the board held that they

failed to show satisfactorily that Barili contributed his part to the joint invention prior to the date of disclosure awarded appellee, and that they "have established no actual reduction to practice prior to Shepherd's filing date."

Appellants raise two questions ancillary to priority, viz.: First, lack of disclosure in Shepherd's application to support the counts; and, second, originality between the parties. Also they argue the question of priority, from the evidence, and, in conclusion, insist that Shepherd's application should not be treated as a constructive reduction to practice.

Appellants, in their patent, disclose a structure, a model of which was introduced as evidence (Barili and Von Dorn Exhibit No. 14), having an anchor, which, on one side only, presents a downwardly extending flat section or "jaw," designed to contact with the side of a cross-tie. From the inner upper end of this flat section there is a curved or hook-shaped section which extends under the rail. This hook-shaped section is stated to be resilient. It terminates in a clamping member which rises to practically the height of the thickness of the edge of the rail, and engages such edge. The entire structure is integral, being all in a single metal piece. The top of the flat portion is higher than the top of the clamping part; that is, the upper edges are not in transverse alinement.

The description of the manner of attaching this anchor is, that it is placed in proper position with reference to the cross-tie and the rail and driven with a sledge or maul. This forces the jaw, which is notched, over one edge, or flange, of the rail, and the hooked member assumes a position of tension under the rail. This hooked member is then "sprung" with a suitable tool until it reaches the other edge of the rail. When this occurs the clamping part rises and grips the other edge.

It is claimed that by this arrangement, any tendency of the rail to move longitudinally will be at once imparted to the anchor, on account of the body portion resting against the cross-tie, and that, since the anchor engages the cross-tie at one end (of the anchor) only, any pressure thereon will be imparted to the clamping end with a twisting motion, which twisting motion intensifies the grip of the clamping end because the latter will not move, while the flat jaw will move slightly.

The drawings of the Shepherd application also show an integral device having an inner curved back, but with flat jaws, one much wider than the other, at either end, designed to contact with the cross-tie. The lower edges of the jaw parts are in vertical alinement, but the upper edge of one is higher than the upper edge of the other; that is, the upper edges are not in transverse alinement. The jaws are both notched to fit over the rail flanges, the notch of the wider jaw being much deeper than the notch of the other.

In the specification of the Shepherd application, it is said: "In applying my rail anchor to the rail, the jaw 1, since it is of a larger size than the rail flange, is partially slipped over the rail base flange until it does not go any further * * * The shoulder * * * of the laterally bent portion * * * is then struck with a spike maul or pressed with a suitable sledge tool whereby the jaw 2 is caused to clear the edge of the opposite flange and snap into place * * *."

It is proper to state, at this point, certain contentions of appellants somewhat in detail.

In the testimony taken in behalf of appellee, there were filed as exhibits certain sheets of drawings alleged to have been made by Shepherd on March 6, 1927. Appellants' brief divides these into two groups, each group containing four sheets. Group No. 1 embraces Exhibits 2, 3, 4, and 5, respectively, and group No. 2 embraces Exhibits 6, 7, 8, and 9, respectively.

The sheet of drawings of the Shepherd application contains five figures which seem to be quite faithful reproductions of five of the figures shown, respectively, upon Exhibits 6, 7, 8, and 9.

On behalf of appellants there was testimony to the effect that in September or October, 1927, Von Dorn made two pasteboard models of a rail anchor which embodied the invention of the counts, which, after being shown to certain other parties (including a party named Reid), were, through a party named Hyle, sent to Barili in Los Angeles, Cal., who made a series of sketches and also made anchors of different types, finally producing a full sized device, embodying the joint ideas of Von Dorn and himself, which was made a physical exhibit (Barili and Von Dorn Exhibit 14) in the record.

This Exhibit 14 responds to the drawings of appellants' patent which is in interference, and it is insisted by appellants "approached more nearly the form of invention shown in Shepherd's Exhibits Nos. 2, 3, 4 and 5 (Group 1)."

The brief for appellants states: "* * * while we think the evidence warrants the hold-

ing that Reid had full knowledge of both the paste board model, and the actual device, Exhibit No. 14, prior to the time he and Shepherd disclosed their invention to his attorney on or after January 17, 1928, nevertheless, we do not urge this as a basis for the holding that Shepherd derived the invention from Von Dorn, unless the issue is to be so construed as to read upon the Shepherd construction of his Exhibits 6, 7, 8 and 9 (Group 2)."

The contention of appellants relative to lack of disclosure in Shepherd is confined, therefore, to the exhibits of group 2, which are the drawings of Shepherd's application and the argument as to originality between the parties is confined to the exhibits of group No. 1. In other words, if it be held that the disclosures of the exhibits in group No. 2 (the drawings of the patent) do respond to the counts of the interference, the question of originality is practically eliminated by the concession of appellants.

It is argued on behalf of appellants that Shepherd does not secure the twisting effect which gives a gripping action, but secures only a tilting of the anchor. In other words, appellants, it is argued, secure a gripping action of their clamping member by a twisting effect, while Shepherd's gripping action is the result of a tilting effect.

This seems to us to be obviously a functional matter, not mentioned in the counts.

We discern no error in the statement of the Board of Appeals, reading: "* * * While the device illustrated in the Shepherd application drawings is specifically different from that shown in the junior parties' patent, the counts are clearly generic to the two devices."

■ We are, therefore, of the opinion that the disclosures of Shepherd, in the light of the description of attaching above given, read upon the counts of the interference. Consequently, there seems to be no occasion for our analyzing here the evidence and contentions relating to the drawings shown in Shepherd's Exhibits 2, 3, 4, and 5 (group 1), the idea of which is alleged to have been obtained from appellants through Reid, who seems to have furnished the finances for prosecuting the Shepherd application in the Patent Office and to have been assigned an interest therein by Shepherd.

The argument, in behalf of appellants, relating to priority "in the ordinary sense," is, in part, based upon the contention that the finding of the Board of Appeals "was largely founded upon the same erroneous interpretation of the issue as caused the other points to be decided against appellants." Since we do not regard that interpretation as being erroneous, this part of the argument need not be further considered here.

■ It is further claimed by appellants that the evidence proves reduction to practice by Barili and Von Dorn, "in the fall of 1927, or at least the first part of January, 1928," prior to reduction to practice by Shepherd, and that, were it so held, Shepherd would be required to prove diligence from the time appellants entered the field, which, it is insisted, "clearly he could not do."

Both the Examiner of Interferences and the Board of Appeals, in their decisions, analyze the pertinent testimony bearing upon this phase of the matter, quite fully, and agree in their conclusion drawn therefrom. Our own study of the record satisfies us that the conclusion is correct.

If appellants' invention be the joint product of Barili and Von Dorn, as claimed, then, of course, the pasteboard models, stated to have been made by Von Dorn in the summer of 1927, did not contain the full conception. Additions to the Von Dorn conception were made after the matter had been placed in the hands of Barili which appears to have been in December, 1927. There is so much confusion in the testimony as to the method by which, and the date upon which, the completed device made by Barili, or under his direction, was returned to Von Dorn in New York, that we should not feel justified in overruling the findings of the Patent Office tribunals, and holding that appellants sustained the burden resting upon them as the junior parties.

The decision of the Board of Appeals is affirmed.

Affirmed.